**In re James Earl DEFRANTZ, Debtor.**

**John Nady, Appellant,**

**v.**

**James Earl DeFrantz; Martha G. Bronitsky, Chapter 13 Trustee; Fred S. Hjelmeset, Chapter 7 Trustee; United States Trustee, Oakland, Appellees.**

**BAP No. NC–11–1002–JuHPa.**
**Bankruptcy No. 10–40880.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on June 16, 2011.

Decided July 12, 2011.

---

Frederic D. Schrag, Esq. argued for Appellant.

John Nady; and Sarah Lampi Little, Esq., argued for Appellee James Earl De-Frantz.

Before: JURY, HOLLOWELL, and PAPPAS, Bankruptcy Judges.

## OPINION

JURY, Bankruptcy Judge.

Appellant, secured creditor John Nady ("Nady"), appeals the bankruptcy court's order granting the motion of debtor, James Earl DeFrantz, to convert his chapter 13 [1] to one under chapter 7. We AFFIRM.

## I. FACTS

On September 1, 2000, debtor entered into a commercial lease agreement to rent

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

law office space from Nady.[2] On April 27, 2005, Nady sued debtor for breach of the lease and waste. On February 13, 2008, Nady obtained a default judgment against debtor in the California Superior Court for $58,811.25. Thereafter, Nady sought to enforce the judgment by garnishing debtor's earnings from his employer.

As a result, debtor filed a bare bones chapter 7 petition in the Northern District of California (Bankruptcy Case No. 08–47766). The bankruptcy court dismissed his case because debtor was ineligible for a chapter 7 discharge at the time due to a prior chapter 7 discharge obtained in 2002 (Bankruptcy Case No. 02–40324). After the case was dismissed, Nady resumed garnishing debtor's earnings from his employer.

On September 21, 2009, debtor filed in state court a claim of exemption from garnishment of his wages, which the state court partially granted. Nady also began garnishing the community property earnings of debtor's wife, Karen. Karen filed a claim of exemption in the state court which was tentatively granted as to all her wages. At the January 22, 2010 hearing on Karen's claim of exemption, the court took the matter under submission.

On January 27, 2010, debtor filed a chapter 13 petition pro se. Debtor did not join Karen as a co-debtor in his chapter 13 petition. The following day, the state court issued its final ruling on Karen's claim of exemption ordering the claim partially granted, but allowing the garnishment of her wages in the amount of $436 per month. The enforcement of that order was stayed by debtor's bankruptcy filing. See § 1301.

On April 6, 2010, Sarah Lampi Little entered an appearance in the case as attorney for debtor. On the same day, debtor filed amended schedules and a first amended chapter 13 plan.

On May 5, 2010, Nady filed a proof of claim for $113,720.50, designating $70,811.25 as secured and $42,909.25 as unsecured. On the same day, Nady filed an objection to debtor's first amended plan but did not include lack of good faith as one of the grounds.

On June 24, 2010, Nady filed a motion to dismiss debtor's case with prejudice for cause, including bad faith conduct, under § 1307(c). Nady alleged that debtor filed his petition in bad faith, that debtor failed to timely provide a copy of his federal income tax return for the most recent tax year to either the trustee or Nady, and that debtor's chapter 13 payments were not current.

On July 6, 2010, debtor filed a second amended plan. At the July 9, 2010 confirmation hearing, the bankruptcy court confirmed the second amended plan over Nady's objection, without prejudice to Nady's motion to dismiss which was scheduled for hearing on August 25, 2010.

On August 25, 2010, after hearing oral argument on Nady's motion to dismiss, the court revoked its prior order confirming debtor's second amended plan based on improper expenses for a time share and debtor's son's private schooling. The court did not make any ruling on the issue of debtor's alleged bad faith, but continued Nady's motion to dismiss to September 17, 2010.

On September 10, 2010, debtor filed a third amended plan and amended Schedule J which eliminated the timeshare expense and reduced the expenses for his son's schooling. Debtor's third amended plan increased the plan payment from $421 monthly to $1,000, which, in turn, in-

---

2. Robert Byers is also listed as a lessee along with debtor on the lease.

creased the dividend to unsecured creditors from two percent to twenty-five percent.

On September 17, 2010, the court continued Nady's motion to dismiss to October 20, 2010, to allow Nady to file an objection to the third amended plan before the notice time ran. The bankruptcy court also asked Nady to make an effort to settle with debtor.

Nady then moved for a 2004 exam of debtor and his wife and requested numerous documents. Because debtor could not timely comply with Nady's request, they agreed to continue Nady's motion to dismiss from October 20, 2010 to December 7, 2010.

On November 24, 2010, Nady filed a lengthy argument in support of his objection to the confirmation of debtor's third amended plan. Apparently at this point debtor did not believe he could confirm a plan without considerable expense. Accordingly, on December 2, 2010, debtor filed a motion to convert his case to chapter 7. Although debtor's pleading was styled as a motion, he gave no notice to Nady or any other parties. Moreover, there is no indication in the record that the court treated debtor's request as a motion with notice required because the court entered the order approving the conversion on December 6, 2010, just three days after debtor filed the motion.

Despite the conversion, Nady's counsel appeared at the December 7, 2010 continued hearing on Nady's motion to dismiss. Nady argued then, as he does now, that debtor did not have the absolute right to convert his case under § 1307(a), relying on the holdings in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S.Ct.

1105, 166 L.Ed.2d 956 (2007) and *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764 (9th Cir.2008). That argument was not fully developed at the hearing, but the court briefly distinguished *Marrama* on the ground that it spoke of conversion from chapter 7 to chapter 13. The court declined to hear Nady's motion to dismiss since debtor's case had already been converted. The court stated that "[i]f you have issues you'll need to take it up in the Chapter 7 proceeding. . . ." Hr'g Tr. (December 7, 2010) at 2:24–25.

Nady timely appealed the order converting debtor's case.

Subsequent to this appeal, on January 7, 2011, Nady filed a motion to dismiss debtor's chapter 7 case with prejudice under § 707(a) and for abuse of process. On February 2, 2011, the bankruptcy court denied Nady's motion, finding that there were no grounds for dismissal under § 707(a) and no abuse of process.[3]

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether debtor's right to convert from chapter 13 to chapter 7 under § 1307(a) was conditioned by Nady's pending motion to dismiss under § 1307(c).

## IV. STANDARDS OF REVIEW

 Statutory interpretation is a question of law subject to de novo review. *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1233 (9th Cir.2002).

---

**3.** We take judicial notice of the order which was filed with the bankruptcy court through the electronic docketing system. *Atwood v.*

*Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n. 9 (9th Cir. BAP 2003).

■ An order converting a case is reviewed for abuse of discretion. *In re Rosson*, 545 F.3d at 771. However, this case involves the alleged failure of the trial court to exercise its discretion, not the abuse of it. Here, the bankruptcy court did not address the merits of Nady's motion to dismiss debtor's chapter 13 case under § 1307(c) because it had approved conversion of debtor's case to chapter 7. Because the bankruptcy court did not exercise its discretion, the issue of whether or not it should have done so presents a legal question which is subject to de novo review. *Garrett v. City and County of S.F.*, 818 F.2d 1515, 1518 n. 3 (9th Cir. 1987).

■ We may affirm the bankruptcy court's decision on any ground fairly supported by the record. *Wirum v. Warren (In re Warren)*, 568 F.3d 1113, 1116 (9th Cir.2009) (citing *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223 (9th Cir. 1999)).

## V. DISCUSSION

■ Section 1307, which governs conversion or dismissal of chapter 13 cases, provides in part:

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

(b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause.... [4]

(g) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

Nady argues on appeal that debtor's right to convert his case under § 1307(a) is not absolute and, therefore, once Nady raised the issue of debtor's bad faith by a motion to dismiss under § 1307(c), the bankruptcy court should have conducted a hearing on his motion prior to converting debtor's case. From a policy perspective, Nady also contends that § 1307(a) should not be available for a debtor to dodge the consequences of his bad faith conduct and to avoid a hearing on the issue of bad faith. In this regard, Nady complains that he is foreclosed from seeking dismissal for debtor's bad faith under § 707(b)(3) because debtor's debts are primarily business debts. He further maintains that he is foreclosed from seeking dismissal for debtor's bad faith under § 707(a) due to the holding in *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191 (9th Cir.2000) (bad faith does not constitute "cause" under § 707(a)).

In support of his position, Nady relies on a California Practice Guide for Bankruptcy which opines that after *Marrama*, bad faith conduct may also forfeit the debtor's "absolute right" to convert from chapter 13 to chapter 7. *See* March, Ahart

---

4. Bad faith is not listed as an example of "cause" in the statute. However, under Ninth Circuit precedent, bad faith is "cause" for a dismissal of a chapter 13 case with prejudice under § 1307(c). *In re Leavitt*, 171 F.3d at 1224.

and Tchaikovsky, CALIFORNIA PRACTICE GUIDE: BANKRUPTCY, § 5:1878, p. 5(II)–15 (2009). Nady also relies on the Ninth Circuit's decision in *In re Rosson,* 545 F.3d 764, which, in turn, relied on the Supreme Court's decision in *Marrama,* 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956, to conclude that a chapter 13 debtor does not have an absolute right to dismiss his or her case under § 1307(b). According to Nady, the reasoning of *Rosson* applies equally here—if a debtor's right of voluntary dismissal under § 1307(b) is not absolute, a debtor's right of voluntary conversion under § 1307(a) is also not absolute.

Bankruptcy courts within the Ninth Circuit have historically considered the right to convert from chapter 13 to chapter 7 as "absolute" due to the language of § 1307(a) (chapter 13 debtor has a non-waivable right to convert his case at any time). *See In re Torres,* 2000 WL 1515170, at *2 (Bankr.D.Idaho 2000) (chapter 13 debtor has the absolute right to convert his or her case at any time); *In re Boggs,* 137 B.R. 408, 410 (Bankr. W.D.Wash.1992) (noting that "while § 1307(b) conditions dismissal and requires court action, § 1307(a) gives debtors the absolute right to convert to Chapter 7 at any time"); *In re Humphreys,* 64 B.R. 215, 216 (Bankr.D.Or.1986) (noting that "[s]ince, under § 1307(a), the debtor has an absolute right to convert a case under Chapter 13 to a case under Chapter 7, the court is not called upon to exercise discretion in ordering a conversion. The order of conversion is merely ministerial.").

Whether the right to convert from chapter 13 to chapter 7 is truly "absolute" has been called into question by the Supreme Court's decision in *Marrama. Marrama* examined language from § 706(a), which is nearly identical to that of § 1307(a), and

held that a chapter 7 debtor's right to convert to a chapter 13, once thought to be absolute, could be forfeited by bad faith conduct. Of particular importance was § 706(d) which provides that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." The Supreme Court viewed this section as a "limitation" on a debtor's right to convert.[5] 549 U.S. at 371–72, 127 S.Ct. 1105.

The court further explained that under § 1307(c), "a ruling that an individual's chapter 13 case should be dismissed or converted to chapter 7 because of prepetition bad faith conduct . . . is tantamount to a ruling that the individual does not qualify as a debtor under chapter 13." *Id.* at 374, 127 S.Ct. 1105. The court concluded that nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limited the authority of the bankruptcy court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated he is not entitled to the relief available to the typical debtor. Finally, the court emphasized that the broad authority of bankruptcy courts to prevent abuse of process described in § 105(a) authorized an immediate denial of a motion to convert filed under § 706(a). *Id.* at 374–75, 127 S.Ct. 1105.

Extrapolating from the principles espoused in *Marrama,* the Ninth Circuit in *Rosson* held that a chapter 13 debtor's right of voluntary dismissal under § 1307(b) was not absolute, but was qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad faith conduct or "to prevent an abuse of process." 545 F.3d at 774 (citing § 105(a)).

---

5. Section 1307(g) is identical to § 706(d).

However, *Marrama* did not address the precise question raised here: whether a debtor's right to convert from chapter 13 to chapter 7 under § 1307(a) is "absolute." Therefore, we are not persuaded that the court's analysis in *Marrama* controls the outcome of this case.

Nady's primary concern is that § 1307(a) can be used by unscrupulous debtors to dodge the consequences of their bad faith conduct and avoid a hearing on the issue of bad faith. This assertion simply has no support in light of the statutory framework for chapter 7 bankruptcy cases. In reality, applying § 1307(a) by its terms does not grant chapter 13 debtors immunity from misconduct once they convert their case—quite the opposite.

Unlike dismissal, upon conversion a debtor's case continues, the court retains jurisdiction over the debtor and the debtor's estate, and the court has continuing power to address any improprieties that may result from the change in the nature of the proceedings. Furthermore, if bad faith is involved, chapter 7 debtors may be denied a discharge for engaging in improper conduct under § 727, including § 727(a)(4)(A) (authorizing denial of discharge for making false oath or account).[6] There is also the possibility that a debtor may face criminal penalties under 18 U.S.C. § 152 for knowingly and fraudulently making a false oath or account in or in relation to any case under title 11. Therefore, any concern that a debtor can escape the consequences of bad faith conduct or for abuse of process is simply unwarranted.

■ In addition, the procedural rules recognize the differences between a conversion from chapter 7 to chapter 13 and vice versa. Under Rule 1017(f)(2), conversion from chapter 7 to chapter 13 under § 706(a) shall be "on motion filed and served as required by Rule 9013." Thus, before conversion under § 706(a), a court must have the opportunity to scrutinize the request. In contrast, Rule 1017(f)(3) provides that a chapter 13 case shall be converted to chapter 7 without court order when the debtor files a notice of conversion under § 1307(a). Therefore, the Rule contemplates that a debtor may convert his or her chapter 13 case by simply filing a notice of conversion and not a motion. From a practical point of view, such a procedure avoids delays and fosters judicial economy, while at the same time moving a debtor toward a "fresh start" under chapter 7.

■ The Bankruptcy Rules in general are binding and we must abide by them unless there is an irreconcilable conflict with the Code. *See* 28 U.S.C. § 2075; *Hefta v. Am. Classic Voyages Co. (In re Am. Classic Voyages Co.)*, 405 F.3d 127, 132 (3d Cir.2005). We do not perceive that Rule 1017(f)(3) causes an irreconcilable conflict with the Code under these circumstances despite the holding and reasoning in *Marrama*.

In sum, being governed by no binding precedent, we need not adopt the interpretation of the statutory language in § 1307(a) espoused by Nady that, in our view, fosters delay in the administration of bankruptcy cases in general, and which is at variance with Rule 1017(f)(3). Given that other mechanisms exist to prevent a debtor from abusing chapter 7 of the

---

**6.** In fact, Nady's motion to dismiss was largely based on debtor's misrepresentations in his bankruptcy schedules regarding the amount of his and Karen's projected monthly gross income and the amount of their reasonable, necessary and allowable monthly expenses. Nady also alleged that debtor misrepresented the amount of his current monthly income on his Official Form 22C.

Bankruptcy Code, we follow the plain language of § 1307(a) which allows conversion.

## VI. CONCLUSION

For the reasons stated, we AFFIRM.